IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE COMPLAINT
OF LARRY A. RILEY, AS OWNER OF A
20-FOOT 1999 MASTERCRAFT 205 V
RECREATIONAL VESSEL, FOR
EXONORATION FROM OR
LIMITATION OF LIABILITY

Case No. 18-CV-233-GKF-JFJ

## OPINION AND ORDER

This limitation action arises out of an alleged accident on Tenkiller Ferry Lake in northeastern Oklahoma. Before the court is the Motion to Dismiss [Doc. 14] filed by claimant Katie Lee Osborn. She contends, *inter alia*, that the court lacks subject-matter jurisdiction because the lake is not a "navigable waterway" for purposes of federal admiralty jurisdiction. For the reasons set forth below, the motion is granted.

### I. Procedural Background

On April 26, 2018, petitioner Larry A. Riley filed a Complaint in Admiralty for Exoneration From or Limitation of Liability pursuant to the Vessel Owner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.* [Doc. 2]. According to the allegations in his Complaint, Riley piloted a recreational vessel on Tenkiller Ferry Lake (also known as Lake Tenkiller) on or about June 24, 2017. He seeks exoneration from or limitation of liability for all claims arising out of or resulting from the voyage. He asserts that this case falls within the admiralty jurisdiction of the United States and that this court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333. He expressly alleges that Lake Tenkiller is a part of the navigable waters of the United States.

On May 14, 2018, the court issued a Notice of Complaint stating, *inter alia*, that Riley had filed a complaint for exoneration from or limitation of liability, and that all claims were required to be asserted as specified in the notice by July 9, 2018, or be defaulted. [Doc. 13]. On July, 8, 2018, Osborn filed the instant motion to dismiss for lack of subject-matter jurisdiction, as well as

an Answer and Claim. [Doc. 14; Doc. 16]. No other claimants came forth before the July 9 deadline. On July 16, 2018, Osborn filed, with leave of court, an Amended Answer and Claim. [Doc. 22]. She alleges that, on June 27, 2017, Riley took her and others "tubing" behind the boat he was operating, and that Riley failed to slow the boat to a reasonable speed, causing her to be thrown from the tube and to suffer serious bodily injury. She seeks actual and punitive damages.

Riley filed a response in opposition to the instant motion to dismiss on July 27, 2018 [Doc. 24], and Osborn filed a reply thereafter [Doc. 25].

## II. Relevant Facts

Tenkiller Ferry Lake is a reservoir in eastern Oklahoma formed by the damming of the Illinois River upstream from its confluence with the Arkansas River. It is uncontested that the bounds of the lake are within the State of Oklahoma, and that a dam blocks off the southern end of the lake.

Riley asserts that the dam that created the lake "merely cuts off traffic in one direction," and that "one can travel by boat from Lake Tenkiller, up the Illinois River, and into Arkansas." [Doc. 24, pp. 1, 9]. In support of these assertions, Riley cites two exhibits. First, he submitted a screenshot of a Google Maps satellite image purportedly showing the point at which the Illinois River crosses into Oklahoma from Arkansas. [Doc. 24-1]. Second, he submitted a "Vicinity map indicating approximate limit of jurisdiction under Section 10 of the Rivers and Harbors Act of 1899 (RHA)" obtained from the website of the U.S. Army Corps of Engineers, which states, "All down stream waters of the Illinois River to include Lake Tenkiller are subject to Section 10 RHA Regulation." [Doc. 24-2]. Additionally, Riley lists links to the websites of six businesses that offer recreational "raft, canoe, and kayak trips on the Illinois River upstream of Lake Tenkiller." [Doc. 24, p. 9].

Osborn asserts that Lake Tenkiller is used for flood control and recreational purposes and does not have any commercial or interstate shipping, "as the lake is dammed with no way for commercial boats to exit the lake beyond the dam into a different body of water." [Doc. 14, pp. 2, 5]. She maintains that "it is virtually impossible to go to or from Lake Tenkiller . . . from/to the Illinois River with a watercraft due to narrow, shallow, and effectively impassible stretches in between the Illinois and Tenkiller." [Doc. 25, p. 4]. In particular, she asserts that, near Town Branch Guest Ranch, where the Illinois River begins to flow into Lake Tenkiller, there is a large sandbar and barely a trickle of water flows through to Lake Tenkiller. [Doc. 25, p. 3]. In support of this assertion, she has submitted a satellite image depicting the area around the sandbar, which appears to leave only a small stream of water. [Doc. 25, p. 4]. She concedes that "it may be *possible* for small watercrafts to travel through connecting rivers and streams from state to state, ending up in Tenkiller Lake," but contends that "the amount of limited activity cannot possibly amount to finding the lake 'susceptible or capable of being used as an interstate highway of commerce, either as it is presently used or as it may be susceptible to future use.'" [Doc. 14, p. 7 (quoting *Lynch v. McFarland*, 808 F. Supp. 559, 562 (W.D. Ky. 1992))]. *See also* [Doc. 25, p. 5 ("[O]ne might argue that a canoe or possibly a jet ski could potentially accomplish making it through these stretches from one body of water to the next.")].

### III. Legal Standard

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli*

*v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (citing *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994)).

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of a case for lack of subject-matter jurisdiction. Challenges to subject-matter jurisdiction under this rule generally take "one of two forms: (1) facial attacks; and (2) factual attacks." *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). Facial attacks "merely challenge the sufficiency of the complaint, requiring the . . . court to accept the allegations in the complaint as true." *Id.* Factual attacks go beyond the allegations in the complaint and challenge the facts upon which subject-matter jurisdiction depends. *See id.* In such situations, the court has "wide discretion" to consider documentary and testimonial evidence. *See id.* The court need not convert a motion to dismiss under Rule 12(b)(1) to a motion for summary judgment under Rule 56 unless the "resolution of the jurisdictional question is intertwined with the merits of the case." *See id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

The Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const., Art. III, § 2. "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . .'" *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995) (quoting 28 U.S.C. § 1333(1)). "A party seeking to invoke such jurisdiction over a tort claim must satisfy conditions of both location and connection with maritime activity." *Id.* at 527. "In applying the location test, a court must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.*

## IV. Discussion

In her motion to dismiss for lack of subject-matter jurisdiction, Osborn goes beyond the allegations in the complaint and challenges the underlying jurisdictional facts—namely, Riley's allegation that Lake Tenkiller is navigable for purposes of admiralty jurisdiction. As the party invoking federal jurisdiction, Riley bears the burden of showing by a preponderance of the evidence that this court has subject-matter jurisdiction. Riley contends that Lake Tenkiller is a part of the navigable waters of the United States "because it is possible to travel continuously by water from the Lake to another state in the service of a commercial venture." [Doc. 24, p. 4].

The Supreme Court articulated a test of navigability in *The Daniel Ball*, 77 U.S. 557 (1870), as follows:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*Id.* at 563.

"The modern formulation of the test for admiralty navigability may be stated as follows: a waterway is navigable for admiralty jurisdiction purposes if it presently supports interstate commercial activity or if, in its present condition, it is capable of supporting interstate commercial activity." Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 3:3 (6th ed. 2018); *see also LeBlanc v. Cleveland*, 198 F.3d 353, 359 (2d Cir. 1999) ("[A] waterway at the situs in issue is navigable for jurisdictional purposes if it is presently used, or is presently capable of being used, as an interstate

highway for commercial trade or travel in the customary modes of travel on water."); *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1253 (3d Cir. 1994) ("A body of water is navigable for purposes of federal admiralty jurisdiction if it is one that, by itself or by uniting with other waterways, forms a continuous highway capable of sustaining interstate or foreign commerce."); *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975) ("A waterway is navigable provided that it is used or susceptible of being used as an artery of commerce.").

Riley does not suggest that Lake Tenkiller presently supports any interstate commercial activity. Thus, the question is whether, in its present condition, Lake Tenkiller is *capable of* supporting interstate commercial activity. Riley offers virtually no evidence on this question—other than evidence that the Illinois River crosses the Arkansas–Oklahoma border and that several businesses offer recreational raft, canoe, and kayak trips on portions of the Illinois River upstream of Lake Tenkiller. For purposes of deciding the instant motion, the court will assume it is possible to navigate by small raft, canoe, or kayak from Arkansas, down the Illinois River, into Lake Tenkiller. The question then becomes whether such limited capability is sufficient to make Lake Tenkiller a potential highway of interstate commerce for purposes of establishing admiralty jurisdiction.

Several decisions by other federal courts are instructive. A court in the Western District of Kentucky faced a similar issue in *Lynch*, 808 F. Supp. at 560. Specifically, the *Lynch* court addressed "whether travel, limited to canoeing and rafting, up the Big South Fork River from Tennessee to Kentucky and then into Lake Cumberland is sufficient for purposes of conferring admiralty jurisdiction." *Id*. The court asked, "Does the fact that a river, which trickles from a lake in one state and makes a meandering passage into another state, is at best navigable only by canoes and rafts show sufficient susceptibility to trade or travel to convey admiralty jurisdiction?" *Id.* at

562. The court answered, "Surely, this is not the 'highway of commerce' Congress intended to regulate." *Id.* at 563; *see also Tundidor v. Miami-Dade Cty.*, 831 F.3d 1328, 1334 (11th Cir. 2016) (navigability requires that the body of water be capable of supporting *commercial* maritime activity, and the possibility of recreational use assisted by portages is insufficient); *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-CIV, 2006 WL 8426843, at *4 (S.D. Fla. Feb. 28, 2006) ("In order to be considered a navigable water, the river's physical characteristics must permit it to be used on a much larger scale than merely for-profit white water rafting tours.").

This court has also considered the district court's decision in *Tew v. United States*, No. 6:94-cv-299-FHS (E.D. Okla. Feb. 1. 1995), ECF 50, *aff'd on other grounds*, 86 F.3d 1003, 1004 (10th Cir. 1996). In that case, the plaintiff brought a claim against the United States pursuant to the Suits in Admiralty Act, now codified at 46 U.S.C. § 30901, *et. seq.* The district court granted summary judgment in favor of the United States on the grounds that the Illinois River above the Tenkiller Ferry Dam was not navigable for purposes of admiralty jurisdiction.[1] The district court's decision includes the following findings:

> The Illinois River runs from its origin in northwest Arkansas, into Oklahoma in a southwesterly direction into the Arkansas River. Presently, this river has two dams forming two lakes. The first, Tenkiller Ferry Dam at river mile 12.8, forms Lake Tenkiller Ferry within Oklahoma, and the other dam forms Lake Francis at the Oklahoma-Arkansas border. These features alone make interstate commerce impossible. In addition, there are numerous fixed bridges, shoal areas and gravel bars, and, except for the lakes and the lake backup effect, the river is extremely shallow, capable only of being floated downstream in a shallow draft, flat bottomed boat, raft or canoe. . . .
>
> It would be sheer fantasy to claim that this river is navigable within the meaning of the Suits in Admiralty Act. This court finds that the Illinois River cannot be used as a highway of interstate commerce

---

[1] The Tenth Circuit affirmed the district court's decision "without reaching the issue of the navigability of the Illinois River for the purposes of admiralty jurisdiction." 86 F.3d at 1004.

in its ordinary condition; it is not capable of activities related to the business of shipping; it is not navigable in fact.[2]

ECF 50, p. 3 ¶¶ 5–6.

Many of the cases Riley cites are inapposite. For example, Riley cites *Finneseth v. Carter*, 712 F.2d 1041 (6th Cir. 1983). In that case, the Sixth Circuit held that "Dale Hollow Lake clearly meets the requirement that the lake be an *interstate* highway for commerce because it straddles Kentucky and Tennessee." *Id.* at 1044. Accordingly, the court did not need to address the extent to which it was possible to navigate *beyond* the boundaries of the lake, as in this case. *See Lynch*, 808 F. Supp. at 561 (distinguishing *Finneseth*).

Riley also cites the Supreme Court's decision in *The Montello*, 87 U.S. 430, 441–42 (1874). However, "*The Montello* did not define navigable waters for purposes of establishing the limits of admiralty jurisdiction; instead, it defined navigable waters for the purpose of delimiting Congress's power to regulate under the Commerce Clause. The Supreme Court has recognized that the definition of navigable waters used in one context does not necessarily apply in another." *LeBlanc*, 198 F.3d at 358.

Similarly, Riley argues "the U.S. Army Corps of Engineers agrees that Lake Tenkiller is a part of the navigable waters of the United States." [Doc. 24, p. 9]. But determinations by the Army Corp of Engineers with respect to navigability under the Rivers and Harbors Appropriation Act of 1899 or the Commerce Clause are not controlling in navigability determinations for admiralty jurisdiction. *See Finneseth*, 712 F.2d at 1045 n.4; *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012) ("[T]he test for navigability is not applied in the same way in these distinct

---

[2] Notably, the Tenth Circuit has, in *dicta*, characterized the Illinois River as a "non-navigable stream" and a "non-navigable tributary of the Arkansas River." *Tobin v. Pennington-Winter Const. Co.*, 198 F.2d 334, 335–36 (10th Cir. 1952).

types of cases."); *Kaiser Aetna v. United States*, 444 U.S. 164, 171–72 (1979). And, of course, regulatory authority under the Commerce Clause extends beyond navigation. *PPL Montana, LLC*, 565 U.S. at 593; *Kaiser Aetna*, 444 U.S. at 173–74.

One reason determinations by the Army Corps of Engineers do not control is that "federal regulatory authority encompasses waters that . . . were once navigable but are no longer." *PPL Montana, LLC*, 565 U.S. at 592; *see also* 33 C.F.R. § 329.4. In contrast, courts do not apply the "indelible navigability" doctrine—the principle that once a waterway becomes a navigable water of the United States, it remains a navigable water of the United States—when determining admiralty jurisdiction. *See, e.g.*, *Tundidor*, 831 F.3d at 1333; *LeBlanc*, 198 F.3d at 358 ("Recognizing the distinction between legislative authority under the Commerce Clause and admiralty jurisdiction, every circuit court to confront the question has rejected the historic navigability jurisdictional test when determining admiralty jurisdiction."); *Fahnsestock v. Reeder*, 223 F. Supp. 2d 618, 625 (E.D. Pa. 2002) ("[W]e find no justification for extending our jurisdiction to a pleasure boating accident in a dammed, intra-state portion of the Susquehanna, however 'mighty' it may once have been, and however navigable the river may continue to be at other points along its length.").

In *Tew*, the district court explained that the Army Corps of Engineers "determined, for purposes of its regulatory jurisdiction, that the Illinois River *was* navigable water of the United States from its mouth to river mile 75.7." ECF 50, p. 2 ¶ 3 (emphasis added). This determination was "based upon an early day chronicle, circa 1880's, that once upon a time a man floated 1,000 logs from river mile 75.7 on the Illinois River to the Arkansas River." *Id.*, p. 2 ¶ 2. A determination by the Army Corps of Engineers that the Illinois River was navigable one hundred and forty years ago does not control this court's navigability determination for purposes of admiralty jurisdiction.

9

This court finds the decisions in *Lynch* and *Tew* persuasive. Even if it may be possible to navigate along portions of the Illinois River upstream of Lake Tenkiller by small raft, canoe, or kayak, "[t]his is not the sort of maritime activity in which uniform 'rules of the road' are essential." *Lynch*, 808 F. Supp. at 563. Riley has failed to establish that Lake Tenkiller "is used or is susceptible of being used as a highway of interstate commerce in its ordinary condition." *Tew*, ECF 50 at p. 5 ¶ 5 (citing *The Daniel Ball*, 77 U.S. at 563). Thus, he has failed to meet his burden of showing that Lake Tenkiller constitutes a "navigable waterway" for purposes of federal admiralty jurisdiction. Dismissal for lack of subject-matter jurisdiction is therefore warranted.

## V. Conclusion

WHEREFORE, the claimant Katie Lee Osborn's Motion to Dismiss [Doc. 14] is granted.

IT IS SO ORDERED this 6th day of February, 2019.

GREGORY K. FRIZZELL, CHIEF JUDGE